UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| EARNEST TATE, <br> 668 Welworth Street <br> Mobile, AL 36617 | ) <br> ) <br> ) <br> ) | CASE NO. <br><br> JUDGE: |
| on behalf of himself and all others similarly situated, | ) <br> ) <br> ) | **PLAINTIFF'S COMPLAINT** |
| Plaintiff, | ) <br> ) | (Jury Demand Endorsed Herein) |
| v. | ) <br> ) | |
| GREIF, INC. <br> c/o Corporation Service Company <br> 50 West Broad Street, Suite 1330 <br> Columbus, OH 43215 | ) <br> ) <br> ) <br> ) <br> ) | |
| Defendant. | ) | |

Now comes Plaintiff Earnest Tate, by and through undersigned counsel, and for his Complaint against Defendant Greif, Inc. ("Defendant"), states and alleges the following:

**INTRODUCTION**

1. This is a "collective action" instituted by Plaintiff as a result of Defendant's practices and policies of not paying its hourly, non-exempt employees, including Plaintiff and other similarly situated employees, wages for all hours worked and overtime compensation at the rate of one and one-half times their regular rate of pay for all the hours they worked over 40 each workweek, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219.

**JURISDICTION AND VENUE**

2. This court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 as this case is brought under the laws of the United States, specifically the FLSA, 29 U.S.C. § 216(b), et seq.

3. Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendant's headquarters and principal place of business is located Delaware County, Ohio.

## PARTIES

4. At all material times, Plaintiff was a resident of Mobile, Alabama.

5. At all material times, Plaintiff was an employee within the meaning of 29 U.S.C. § 203(e).

6. At all material times, Plaintiff was an employee engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206-207.

7. At all material times, Defendant was a corporation headquartered in Delaware County, Ohio, with its principal place of business located at: 425 Winter Road, Delaware, Ohio 43015.

8. At all material times, Defendant was an employer within the meaning of 29 U.S.C. § 203(d).

9. At all material times, Defendant has been an enterprise in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), and has enjoyed yearly gross revenue in excess of $500,000.

10. Plaintiff's written consent to this action is attached hereto as Exhibit "A."

11. Written consents to join this action, as and when executed by other individual plaintiffs, will be filed pursuant to 29 U.S.C. § 216(b).

## FACTUAL ALLEGATIONS

12. Defendant, a global manufacturer of industrial and paper packaging products, operates more than 100 plants across the United States.

13. At its various plant locations, Defendant manufactures industrial packaging products, including steel, plastic and fibre drums, intermediate bulk containers, and other industrial products; paper packaging products, including containerboard, paperboard, and tubes and cores; and reconditioned recycled packaging products.

14. At its various plant locations, Defendant employs operators, quality control technicians, and material handlers (collectively "manufacturing employees").

15. From 2017 through approximately September 30, 2020, Plaintiff was employed by Defendant as a manufacturing employee, first as a saw operator at the tubes and cores plant in Bey Minette, Alabama, and then as a back tender operator at the reconditioning and recycling plant in Mobile, Alabama.

16. Defendant classified Plaintiff and other similarly situated manufacturing employees as non-exempt employees.

17. Defendant paid Plaintiff and other similarly situated manufacturing employees an hourly wage.

18. Plaintiff and other similarly situated manufacturing employees regularly worked more than 40 hours per week.

**(Failure to Pay for All Hours Worked)**

19. Plaintiff and other similarly situated manufacturing employees were only paid for work performed between their scheduled start and stop times, and were not paid for work performed before and after their scheduled start and stop times, including: (a) changing into and out of their personal protective equipment, including gloves, boots, safety glasses and/or earplugs; (b) getting tools and equipment, including tape, dyes, wrenches, blades, radios, and/or hammers; (c) speaking with employees on the previous shift about manufacturing issues; and/or (d) walking to and from their assigned area of the manufacturing floor.

20. The pre-shift work—*i.e.*, changing into personal protective equipment, getting tools and equipment, speaking with employees on the previous shift, and walking to the assigned area of the plant floor—took approximately 15 minutes or more, and thus, in order to start their work on time, Plaintiff and other similarly situated manufacturing employees had to arrive at least 15 minutes early to start this pre-shift work.

21. The post-shift work—*i.e.*, walking from the manufacturing floor, putting tools and equipment away, and changing out of personal protective equipment—also took approximately 15 minutes or more, and thus, Plaintiff and other-similarly situated manufacturing employees were required to continue working for 15 minutes or more after their shift concluded in order to complete their post-shift work.

22. Moreover, Plaintiff and other similarly situated employees frequently started performing their manufacturing work before their shift start times and continued performing said manufacturing work after their shift end times to complete tasks that were not finished at the end of their shifts.

23. Defendant knew that Plaintiff and other similarly situated manufacturing employees performed this pre-shift and post-shift work because it required them to perform it and supervisors observed them performing it.

**(Failure to Pay for Donning Time)**

24. Before Plaintiff and other similarly situated manufacturing employees began their shifts, they donned personal protective equipment, including gloves, boots, safety glasses, and/or earplug.

25. Wearing personal protective equipment was necessary because Plaintiff and other similarly situated manufacturing employees could not safely perform their work without it. It

4

protected Plaintiff and other similarly situated manufacturing employees from various injuries, including head, hand, foot, eye, ear, and other bodily injuries.

26.     Additionally, Defendant required Plaintiff and other similarly situated manufacturing employees to put the personal protective equipment on and take it off at work so that it was maintained in a sanitary and reliable condition.  Defendant did not want Plaintiff and other similarly situated manufacturing employees to take their personal protective equipment home.

27.     The time Plaintiff and other similarly situated manufacturing employees spent donning their personal protective equipment was an integral and indispensable part of their principal activities, was required by Defendant and the Occupational Safety and Health Administration ("OSHA"), and was performed for Defendant's benefit in that it helped keep the plant floors safe, and helped promote a more safe and efficient manufacturing process.

28.     Donning personal protective equipment is an intrinsic element of the manufacturing process of industrial and paper packing products and materials. Plaintiff and other similarly situated manufacturing employees cannot dispense with donning personal protective equipment if they are to perform their manufacturing work in a safe environment.

29.     Plaintiff and other similarly situated manufacturing employees were not paid for time spent donning their personal protective equipment.

**(Failure to Pay for Retrieving Tools and Equipment)**

30.     In addition to donning their personal protective equipment, Plaintiff and other similarly situated manufacturing employees retrieved tools and/or equipment necessary to perform their manufacturing work.

31. Getting tools and equipment was necessary because Plaintiff and other similarly situated manufacturing employees could not perform my manufacturing work without them.

32. Plaintiff and other similarly situated manufacturing employees had to retrieve their tools before their shift start times because they were not kept in their assigned work area.

33. The time Plaintiff and other similarly situated manufacturing employees spent retrieving tools and/or equipment necessary to perform their manufacturing work was an integral and indispensable part of their principal activities, was required by Defendant, and was performed for Defendant's benefit.

34. Retrieving tools/equipment is an intrinsic element of manufacturing process and was a necessary task because Plaintiff and other similarly situated manufacturing employees could not perform their manufacturing work without them.

35. Plaintiff and other similarly situated manufacturing employees were not paid for the time spent getting tools and/or equipment necessary to perform their manufacturing work.

**(Failure to Pay for Instruction Time)**

36. In addition to donning their personal protective equipment, and gathering their tools and equipment, Plaintiff and other similarly situated manufacturing employees spoke with employees on the previous shift about manufacturing issues that arose during the previous shift and/or manufacturing issues that may arise during their shifts.

37. The time Plaintiff and other similarly situated manufacturing employees spent receiving instructions about manufacturing issues from previous shift employees was an integral and indispensable part of their principal activities, was required by Defendant, and was performed for Defendant's benefit in that it helped keep the manufacturing floor safe, and helped promote a more safe and efficient manufacturing process.

38. Receiving instructions about manufacturing issues from previous shift employees is an intrinsic element of the manufacturing process and was necessary so that Plaintiff and other similarly situated manufacturing employees could learn about manufacturing issues that arose during the previous shifts and the issues they may face on their shifts, which in turn, helped them avoid problems on their shifts.

39. Plaintiff and other similarly situated manufacturing employees were not paid for the time spent speaking with previous shift employees about manufacturing issues.

**(Failure to Pay for Post-donning Walk Time)**

40. After donning their personal protective equipment, retrieving tools and/or equipment necessary to perform their manufacturing work, and/or speaking with employees from the previous shift, Plaintiff and other similarly situated manufacturing employees walked from the area in which they changed into their personal protective equipment and/or meeting location to the production floor. Such time constitutes "post-donning walk time."

41. Plaintiff and other similarly situated manufacturing employees were not paid for their post-donning walk time.

**(Failure to Pay for Performing Manufacturing Work)**

42. Plaintiff and other similarly situated employees were frequently required to arrive to the manufacturing floor prior to the start of their shift and begin performing their manufacturing work.

43. The time Plaintiff and other similarly situated employees spent performing their manufacturing work was an integral and indispensable part of their principal activities, was required by Defendant, and was performed for Defendant's benefit.

44. Plaintiff and other similarly situated manufacturing employees were not paid for the time spent performing their manufacturing work prior to the start of their shift.

**(Failure to Pay for Pre-doffing Walk Time)**

45. After their shifts ended, Plaintiff and other similarly situated manufacturing employees walked from the production floor to the area in which they changed out of their personal protective equipment. Such time constitutes "pre-doffing walk time."

46. Plaintiff and other similarly situated manufacturing employees were not paid for their pre-doffing walk time.

**(Failure to Pay for Doffing Time)**

47. After their shifts ended, Plaintiff and other similarly situated manufacturing employees doffed their personal protective equipment.

48. The time Plaintiff and other similarly situated manufacturing employees spent doffing their personal protective equipment was an integral and indispensable part of their principal activities, was required by Defendant, OSHA, and was performed for Defendant's benefit in that it helped keep the manufacturing floor safe and helped promote a more safe and efficient manufacturing process.

49. Doffing personal protective equipment is an intrinsic element of the industrial manufacturing process. Plaintiff and other similarly situated manufacturing employees cannot dispense doffing their personal protective equipment if they are to perform their manufacturing work.

50. Plaintiff and other similarly situated manufacturing employees were not paid for time spent doffing their personal protective equipment.

**(Failure to Pay Overtime Compensation)**

51. As a result of Plaintiff and other similarly situated manufacturing employees not being paid for all hours worked, Plaintiff and other similarly situated manufacturing employees were not paid overtime compensation for all of the hours they worked over 40 each workweek.

**(Failure to Keep Accurate Records)**

52. Upon information and belief, Defendant failed to make, keep and preserve accurate records of all of the unpaid work performed by Plaintiffs and other similarly situated manufacturing employees.

**(Defendant Willfully Violated the FLSA)**

53. Defendant knowingly and willfully engaged in the above-mentioned violations of the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

54. Plaintiff brings Count One of this action on his own behalf pursuant to 29 U.S.C. § 216(b), and on behalf of all other persons similarly situated who have been, are being, or will be adversely affected by Defendant's unlawful conduct.

55. The class which Plaintiff seeks to represent and for whom Plaintiff seeks the right to send "opt-in" notices for purposes of the collective action, and of which Plaintiff is himself a member, is composed of and defined as follows:

> All operators, quality control technicians, and/or material handlers employed by Defendant Greif, Inc. at one or more of Defendant's industrial products, paper packaging products and/or reconditioning and recycling plants in the United States, at any time between October 21, 2018 and the present.[1]

---

[1] Plaintiff excludes from this definition those individuals who worked for Defendant's former subsidiary, Consumer Packaging Group, Inc.

56. Plaintiff is unable, at this time, to state the exact size of the potential class, but upon information and belief, avers that it consists of more than 1,000 persons.

57. This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to claims for unpaid wages, unpaid overtime compensation, liquidated damages, attorneys' fees, and costs under the FLSA. In addition to Plaintiff, numerous current and former manufacturing employees are similarly situated with regard to their claims for unpaid wages and damages. Plaintiff is representative of those other employees and is acting on behalf of their interests as well as his own in bringing this action.

58. The similarly situated manufacturing employees are known to Defendant and are readily identifiable through Defendant's payroll records. These individuals may readily be notified of this action, and allowed to opt in pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for unpaid wages, unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA.

59. Although the exact amount of damages may vary among the similarly situated employees in proportion to the number of hours they worked, damages for each individual can be easily calculated using a simple formula.

## COUNT ONE
### (Fair Labor Standards Act Violations)

60. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

61. Defendant's practice and policy of not paying Plaintiff and other similarly situated manufacturing employees for all time worked and overtime compensation at a rate of one and one-half times their regular rate of pay for all the hours they worked over 40 each workweek violated the FLSA, 29 U.S.C. §§ 201-219 and 29 CFR § 785.24.

62. Defendant's failure to keep records of all the hours worked each workday and the total hours worked each workweek by Plaintiff and other similarly situated manufacturing employees violated the FLSA, 29 U.S.C. §§ 201-219, 29 CFR § 516.2(a)(7).

63. By engaging in the above-mentioned conduct, Defendant willfully, knowingly, and/or recklessly violated the provisions of the FLSA.

64. As a result of Defendant's practices and policies, Plaintiff and other similarly situated manufacturing employees have been damages in that they have not received wages due to them pursuant to the FLSA.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, and all those similarly situated, collectively pray that this Honorable Court:

A. Issue an order permitting this litigation to proceed as a collective action;

B. Order prompt notice to all class members that this litigation is pending and that they have the right to "opt in" to this litigation pursuant to 29 U.S.C. § 216(b);

C. Award Plaintiff and the class he represents actual damages for unpaid wages;

D. Award Plaintiff and the class he represents liquidated damages equal in amount to the unpaid wages found due to Plaintiff and the class under the FLSA;

F. Award Plaintiff and the class he represents pre- and post-judgment interest at the statutory rate;

G. Award Plaintiff and the class he represents attorneys' fees, costs, and disbursements; and

H. Award Plaintiff and the class he represents further and additional relief as this Court deems just and proper.

Respectfully submitted,

　/s/ Matthew S. Grimsley
Matthew S. Grimsley (Ohio 0092942)
Anthony J. Lazzaro (Ohio 0077962)
Lori M. Griffin (Ohio 0085241)
Alanna Klein Fischer (Ohio 0090986)
The Lazzaro Law Firm, LLC
The Heritage Building, Suite 250
34555 Chagrin Boulevard
Moreland Hills, Ohio 44022
Phone: 216-696-5000
Facsimile: 216-696-7005
matthew@lazzarolawfirm.com
anthony@lazzarolawfirm.com
lori@lazzarolawfirm.com
alanna@lazzarolawfirm.com

Attorneys for Plaintiff

## JURY DEMAND

Plaintiff demands a trial by jury on all eligible claims and issues.

　/s/ Matthew S. Grimsley
Matthew S. Grimsley (Ohio 0092942)

One of Plaintiff's Attorneys